IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| CINDA L. COLGROVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-126 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in April 2005, claiming to be disabled by neck pain, headaches, and "cancer residuals." [Tr. 35, 72]. She alleged a disability onset date of October 12, 2004, secondary to complications from an automobile accident on that date. [Tr.

33, 49, 72, 362]. Plaintiff's claim was denied initially and on reconsideration. She then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in November 2006.

On January 5, 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of degenerative disc disease and degenerative joint disease, but that these conditions do not meet or equal any impairment listed by the Commissioner. [Tr. 15]. The ALJ further concluded that plaintiff retains the residual functional capacity ("RFC") to work at light level of exertion, and that she is able to return to her past relevant work as a department store clerk. [Tr. 15, 17]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on April 4, 2007. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

III.

*Background*

Plaintiff was born in 1951. [Tr. 35]. She has a twelfth grade education. [Tr. 427]. Her previous employment includes work in a department store. [Tr. 79]. She stands 5' 4" tall and weighs up to 222 pounds. [Tr. 293, 375].

Plaintiff alleges weekly migraines and "extreme" pain in her back, neck, arm, shoulder, and chest. [Tr. 49, 60, 62]. She reports numbness and tingling in her arms and hands. [Tr. 56]. Plaintiff is able to clean, shop, walk, and socialize "when I feel good

4

enough." [Tr. 50]. She testified at the administrative hearing that her medication makes her "so drowsy that I can't do anything other than lay down and go to sleep." [Tr. 439].

In August 2005, plaintiff told the Commissioner that she "cannot drive a car." [Tr. 29]. At the administrative hearing, she testified, "I can drive, yes." [Tr. 434].

Also in August 2005, plaintiff told the Commissioner that she "can't hardly raise" her right arm. [Tr. 62]. In September 2005, she told the Commissioner that she cannot raise her right arm without pain. [Tr. 89]. At the administrative hearing, plaintiff claimed to suffer from a loss of motion in the right arm *while she was simultaneously raising that arm*. [Tr. 437]. When the ALJ pointed out the obvious inconsistency, plaintiff blamed her confusion on a headache or a virus. [Tr. 437].

IV.

*Relevant Evidence*

On appeal, plaintiff argues that the ALJ failed to properly credit her subjective complaints of back, neck, and shoulder pain, migraines, and medication side effects. She also contends that the ALJ employed an incorrect Dictionary of Occupational Titles ("DOT") definition in classifying her prior department store employment. Specifically, she claims to have worked as a "stock clerk," which is a heavy exertion job not within her RFC, *see* DICOT 299.367-014, 1991 WL 672631, rather than as a light exertion "sales clerk," *see* DICOT 290.477-014, 1991 WL 672554, as determined by the ALJ. The court's factual recitation will focus on those issues.

5

A. <u>Medical</u>

Plaintiff underwent a right mastectomy in 1994. She has had no subsequent recurrence of the cancer. [Tr. 288].

October 12, 2004 cervical imaging showed "degenerative spondylosis of the cervical spine with disc space narrowing at C5-6 and C6-7." [Tr. 197]. Thoracic imaging revealed "mild degenerative spondylosis," and lumbar imaging was normal. [Tr. 195].

After plaintiff's traffic accident, treating physician Susanne Toyne on October 26, 2004, observed some reduced range of motion of the neck along with tenderness and spasm of the spine. [Tr. 130]. Dr. Toyne nonetheless certified that plaintiff was able to return to work the following week. [Tr. 131]. Dr. Toyne recorded similar observations on November 2, 9, and 16, 2004, but continued to certify that plaintiff was capable of returning to work. [Tr. 125-29]. Dr. Toyne's recorded recommendations were that plaintiff should lose weight and monitor her diabetes. [Tr. 125, 127, 129].

A November 2004 CT scan of the head showed a "mucous retention cyst" and possible "acute and chronic sinusitis," but "no acute intracranial abnormalities." [Tr. 193]. Neurologist David Garriott termed the results "normal." [Tr. 331].

Plaintiff first consulted with Dr. Garriott in December 2004. Examination revealed normal muscle tone, bulk, and strength. [Tr. 332]. Plaintiff returned to Dr. Garriott the following month. He reviewed "AP and lateral thoracic spine films that . . . were unremarkable." [Tr. 329].

6

March 2005 cervical and thoracic imaging was consistent with the October 2004 findings. [Tr. 189]. April 2005 lumbar bone mineral density testing yielded results in the osteopenic range, and a body scan showed probable degenerative spondylosis in the lumbar spine. [Tr. 185, 188]. Dr. Garriott noted degenerative changes but no root impingement. [Tr. 327-28].

An electromyogram suggested radiculopathy at C7. [Tr. 327, 336]. Neurologist Garriott wanted to possibly obtain additional information by way of myelography, but plaintiff "did not want that" due to a purported fear of needles. [Tr. 327]. Dr. Garriott told plaintiff "that I consider her outlook good. . . . I suspect she will begin showing improvement." [Tr. 327].[1]

In July 2005, Dr. Garriott offered to perform an epidural steroid injection to plaintiff's neck. Plaintiff refused, instead "really want[ing] to take a conservative approach." [Tr. 326].[2] In September and October 2005, Kingsport Medical Center staff observed reduced range of motion in the neck and right shoulder, along with tenderness of the neck. [Tr. 302-03]. Dr. Garriott's October 12, 2005 notes reflect that plaintiff "return[ed] with a chief complaint of about the same, old, everything." [Tr. 325]. Plaintiff reported neck pain secondary to lifting her grandchild. Dr. Garriott wrote,

---

[1] According to plaintiff, "My neurologist tells me it'll get better - it's only gotten worse." [Tr. 66].

[2] Plaintiff claims "an extreme fear of needles in my spine" and acknowledges refusing injections from Dr. Garriott ("I've told him only when it's extremely unbearable."). [Tr. 66].

7

> Her migraine headaches are doing well on Topamax 25 mg daily. . . .
>
> . . .
>
> . . . The patient lies down and sits back up from the exam table without difficulty. Straight leg raising is normal. Range of motion of shoulders reveals no limitation of motion. The patient moves about standing, sitting, and walking without difficulty.

[Tr. 325]. Plaintiff returned to Dr. Garriott in February 2006 with a primary complaint of left hand numbness. [Tr. 375]. Dr. Garriott's pertinent objective observations were unremarkable. He also again recorded, "Migraines are better on the Topamax." [Tr. 375].

Nonexamining physician Michael Ryan generated a Physical RFC Assessment in June 2005. Dr. Ryan opined that plaintiff could work at the medium level of exertion without limitation. [Tr. 346-52]. In November 2005, nonexamining Dr. Joe Allison generated a Physical RFC Assessment, reaching the same conclusions as Dr. Ryan. [Tr. 354-61]. Nonexamining physician Theron Blickenstaff wrote an opinion letter in October 2006. Dr. Blickenstaff opined that plaintiff could work at the light level of exertion with "limited work overhead; limited pushing and pulling with the upper extremities." [Tr. 407].

In August 2005, plaintiff told the Commissioner that she does not leave her home due to depression caused by her pain. [Tr. 60]. In October 2005, treating physician Toyne opined that plaintiff does not "have an underlying mental disorder which significantly interferes with functioning[.]" [Tr. 107].

B. <u>Vocational</u>

In her March 2005 Work History Report, plaintiff titled her department store job "cashier and stocker ('sales associate')." [Tr. 41]. She further described,

> 2 or 3 days per week go in early in a.m. and lift, open large boxes of clothing, then hang on racks & strip off plastic or if to be folded, carry boxes out to dept., then move around clothes already on racks, on on [sic] racks on wall, or tables and put new merchandise. [sic] Sometimes move around floor fixtures.
>
> . . .
>
> Lifted boxes of clothes, 2 to 10 feet, 2 to 3 times per week. 4 times closer to Christmas holidays. Also helped customers to cars with comforter sets and luggage.
>
> . . .
>
> . . . First 4 years worked in home store in bedding lifting comforter sets weighing up to 35 lbs. On truck days we'd have to unbox each set and for new lines stock on shelving requiring moving big safety ladder and carrying each comforter up ladder to shelf - almost to ceiling. Also have to do same with luggage, some came nested in boxes up to 45-50 lbs.

[Tr. 42, 48].

By letter to the Commissioner dated August 16, 2005, plaintiff further described her department store duties.

> Before your office said I could resume my old position *as a cashier*. This is not possible. When people purchase clothing, they usually do not buy one item, but several especially during a sale. So, you take them off hangers, fold them, scan them & bag them. . . . This isn't all to the job [sic]. We were required to go in at 8 a.m. or earlier depending on time of year, 2 to 3 times per week, and unload the truck bringing new merchandise. These boxes are heavy 25 to 35 lbs depending. So we'd get our boxes then open them & put clothes on a rolling rack or table to fold. Then out to sales floor. Sometimes we'd have to move a whole rack to another position. Put clothes on racks and even

9

>   up to wall - reaching above shoulder height or climbing a step stool. This is
>   a lot of heavy work. Even in a grocery there are heavy items.

[Tr. 64] (emphasis added).

In August 2006, both in her "Disability Report - Adult" and her "Work History Report," plaintiff used the title "cashier" to describe her department store job. [Tr. 72, 79]. The records of treating physician Toyne identify plaintiff as a "sales associate." [Tr. 141, 160, 168]. The records of consulting gastroenterologist Ravindra Murthy also identify plaintiff as a "sales associate." [Tr. 293].

At the administrative hearing, plaintiff agreed that she was a "retail sales clerk" but added that "we still had to open boxes and take everything out and put it on the shelves[.]" [Tr. 428]. She additionally testified that she would "leave that [overhead stocking work] a lot of times for the stockperson that helped." [Tr. 437].

A state agency vocational specialist (full name illegible) completed a brief Vocational Assessment in June 2005. [Tr. 100]. Therein, plaintiff's past relevant work was identified as "sales clerk," DOT job number 290.477-014.

V.

*Analysis*

A. RFC

As noted above, the ALJ concluded that plaintiff remains able to perform the full range of light exertion. Plaintiff argues that this conclusion did not adequately consider: (1) Dr. Blickenstaff's opinion letter limiting her pushing, pulling, and overhead lifting; (2)

her degenerative disc disease of the cervical spine; (3) her complaints of neck pain and migraines; and (4) the purported sedative effect of her medications.

Upon surveying the record as a whole, the court concludes that the RFC determined by the ALJ survives substantial evidence review. Certainly, the administrative record contains objective evidence of conditions which would reasonably be expected to cause some degree of upper body discomfort. At the same time, the record also contains evidence that plaintiff's limitations are not as severe as alleged.

Treating physician Toyne was well-aware of tenderness, spasm, migraines, and reduced range of motion but nonetheless opined that plaintiff was capable of returning to work. [Tr. 125-31]. Treating neurologist Garriott deemed plaintiff's outlook "good." [Tr. 327]. Dr. Garriott also observed that plaintiff moves without difficulty. [Tr. 325]. He wrote that plaintiff's migraines were "doing well" with medication. [Tr. 325]. Plaintiff points to no physician records in which she reported debilitating medication side effects, nor did any physician opine that medications would limit her beyond the RFC determined by the ALJ.

It is noteworthy that, due to a purported fear of needles, plaintiff rejected the myelography and epidural steroid injection recommended by the treating neurologist. [Tr. 326-27]. Plaintiff's desire to take a "conservative approach" is inconsistent with the conduct that would be expected from a person who suffers from the extreme limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). Also, while plaintiff reports left hand numbness, neurologist Garriott's pertinent objective observations

11

were unremarkable. [Tr. 375]. While plaintiff has told the Commissioner that she "stay[s] home instead of going out" due to depression [Tr. 60], treating physician Toyne opined that plaintiff does not "have an underlying mental disorder which significantly interferes with functioning[.]" [Tr. 107]. While plaintiff has told the Commissioner that she "cannot drive a car" [Tr. 29], she later testified, "I can drive, yes." [Tr. 434]. While plaintiff has told the Commissioner that she "can't hardly raise" her right arm [Tr. 62], Dr. Garriott observed that "[r]ange of motion of shoulders reveals no limitation of motion" [Tr. 325], and plaintiff's testimony on this issue was less than persuasive. [Tr. 437]. Therefore, on the record before the court, a reasonable adjudicator could conclude - as did the ALJ - that plaintiff's complaints are overstated.

As for the assessments of nonexamining physicians Ryan, Allison, and Blickerstaff, two of these sources opined that plaintiff could perform medium exertion without limitation, and the other opined that plaintiff could perform only light work with restrictions on pushing, pulling, and overhead work. This conflict characterizes the task with which ALJ's are frequently presented - synthesizing several divergent opinions in light of a complainant whose statements at times appear unreliable.

In light of the record as a whole, restricting plaintiff to light exertion was not an unreasonable conclusion. Certainly, the present ALJ *could have* further credited plaintiff's subjective complaints. However, he could also have reasonably rejected them based on the present record. The substantial evidence standard of review permits that "zone

of choice," *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), and the ALJ's RFC determination will not be reversed.

## B. Past Relevant Work

Citing the state agency vocational specialist identification of plaintiff's past relevant work as "sales clerk" (DOT 290.477-014) and the following exchange between the ALJ and plaintiff's counsel at the administrative hearing, the Commissioner argues that any objection to the classification of prior work has been waived:

ALJ: Do you have any objections to the proposed exhibits in the file?

ATTY: No objections.

ALJ: All right. We'll admit into evidence Exhibits 1A through 20F.

[Tr. 426]. The Commissioner's waiver argument is without merit. Conceding that evidence is admissible in no way waives the right to challenge the weight or validity of that evidence.

The ALJ's classification of prior work will instead be analyzed under traditional substantial evidence review, and there is ample evidence to support the ALJ's conclusion that plaintiff previously worked as a "sales clerk" rather than a "stock clerk."

In her March 2005 Work History Report, plaintiff titled her department store job "cashier and stocker ('sales associate')." [Tr. 41]. In her letter to the Commissioner dated August 16, 2005, plaintiff employed the term "cashier." [Tr. 64]. In her August 2006 "Disability Report - Adult" and "Work History Report," plaintiff again used the label "cashier." [Tr. 72, 79]. The records of Drs. Toyne and Murthy identify plaintiff as a "sales

13

associate" [Tr. 141, 160, 168, 293], and that information would unquestionably have come from plaintiff. At the administrative hearing, plaintiff agreed that she was a "retail sales clerk" who would often delegate [overhead stocking work] to " *the stockperson that helped.*" [Tr. 428, 437] (emphasis added).

There are two DOT job titles at issue. The first is "sales clerk," DICOT 290.477-014. According to the DOT, a sales clerk "[o]btains or receives merchandise, totals bill, accepts payment, and makes change for customers in [a] retail store[.]" Additional duties include stocking and arranging merchandise. Conversely, the related position of "stock clerk," DICOT 299.367-014, involves inventorying, stocking, pricing, reordering, receiving, and invoicing merchandise. According to the DOT, a stock clerk "may" also perform some cashiering duties.

While these two job descriptions are related, it is apparent that the DOT considers a "sales clerk" to be a cashier who also performs some stocking work, whereas a "stock clerk" is a stockperson who "may" also perform some sales functions. Throughout the administrative record, plaintiff identified herself as a "cashier" or "sales associate" who also performed stocking duties on certain days. There is thus substantial evidence to support the ALJ's conclusion that plaintiff worked as a "sales clerk," DICOT 290.477-014, rather than as a "stock clerk," DICOT 299.367-014. The state agency identification of plaintiff's past relevant work as "sales clerk" (DOT 290.477-014) further bolsters the ALJ's conclusion.

Even though plaintiff's prior work was apparently performed at the *medium* level of exertion, the ALJ did not err in concluding that she could return to that work despite an RFC of no more than *light* work. The DOT identifies job 290.477-014 as "light work." A claimant can return to past relevant employment if she is capable of meeting the demands of that "kind of work . . . as generally performed in the national economy." *See* 20 C.F.R. §§ 404.1520(f), 404.1560(b)(2).

The final decision of the Commissioner will accordingly be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge